**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ROCO, INC., on behalf of itself and all others similarly situated,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **EOG RESOURCES, INC.,** <br><br> **Defendant.** | **Case No. 14-1065-JAR-KMH** |

**MEMORANDUM AND ORDER**

This putative class action was removed in March 2014 from the District Court of Seward County, Kansas. The Second Amended Complaint ("SAC") alleges that Defendant EOG Resources, Inc. ("EOG") underpaid Kansas and Oklahoma royalty owners of EOG-operated gas wells. This matter is before the Court on the following motions: Defendant's Motion for Partial Judgment on the Pleadings (Doc. 22); Sonya Smith's Motion to Intervene as Named Plaintiff (Doc. 32); Plaintiff Roco Inc.'s Motion to Amend Complaint (Doc. 34); and Defendant's Motion to Sever and Transfer Oklahoma Claims to the Western District of Oklahoma (Doc. 24). These matters are now fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court grants Smith's motion to intervene and Plaintiff's motion for leave to amend. The Court determines that these amendments render moot Defendant's motion for judgment on the pleadings. The Court further denies Defendant's motion to sever and transfer, as it finds that the requisite factors counsel against splitting this action into two cases located in two district courts.

## I. Procedural and Factual Background

On December 22, 2008, Roco filed this suit in the District Court of Seward County, County, Kansas alleging claims on behalf of itself and all other similarly situated royalty owners of Defendant-operated gas wells in Kansas. Roco is a Kansas corporation and has a royalty interest in one EOG-producing well in Kansas; EOG sold its interest in the lease to a third party in April 2013. Roco alleges that EOG underpaid royalty owners by taking numerous deductions before the gas products were in marketable condition, and by not obtaining the highest and best reasonable price for all the constituents of the gas stream. Roco alleged that many of these deductions were not included on the royalty owners' check stubs so they were hidden.

The parties proceeded to conduct some limited discovery in 2009 and 2010 and the case appears to have been stagnant in 2011, 2012, and much of 2013. On November 6, 2013, Plaintiff sought leave to amend its petition to add a new putative subclass of royalty owners in EOG wells in Oklahoma. Defendant opposed the motion on grounds of undue delay, bad faith, and prejudice. It did not raise a futility argument. The state court granted leave to amend on February 7, 2014. The amended petition alleged nine claims for relief, several of which were brought under Oklahoma law and applied to the Oklahoma royalty owners only.

On March 3, 2014, EOG filed its Notice of Removal pursuant to the Class Action Fairness Act of 2005 ("CAFA").[1] Defendant alleged, *inter alia*, that "specifically, with the addition of putative class claims on behalf of Oklahoma royalty owners, the amount in controversy exceeds $5 million."[2] Plaintiff filed its SAC on April 17, 2014, defining the

---

[1]Pub. L. No. 109-2, 119 Stat. 4 (codified as amended at 28 U.S.C. § 1332(d)).

[2]Doc. 1 ¶ 1.

proposed Class as follows:

> All royalty owners of EOG Resources, Inc. wells in Kansas or Oklahoma that were operated by or marketed and directly paid to royalty owners by EOG Resources, Inc. that produced gas, NGLs, Helium, or other constituents of the gas stream from January 1, 1993 to the date Class Notice is given.
>
> Excluded from the Class are: (1) the Bureau of Ocean Energy Management, Regulation and Enforcement (f/k/a Minerals Management Service) (Indian tribes and the United States); (2) Any NYSE or NASDAQ listed company (and its affiliates) that are producing oil and gas companies; (3) Defendant, its affiliates, and employees, officers, and directors; and, (4) overriding royalty interests.[3]

The SAC alleges two claims: breach of the gas royalty leases under both Kansas and Oklahoma law, and breach of fiduciary duty under Oklahoma law. The parties agree that Count II applies only to those putative class members located in Oklahoma.

Within days of Plaintiff filing the SAC, Defendant filed its motion for partial judgment on the pleadings, in which it argues that Roco lacks standing to assert claims on behalf of royalty owners located in Oklahoma because it has suffered no injury in Oklahoma for which Oklahoma law could redress. Plaintiff argues that it has standing to assert claims on behalf of both Kansas and Oklahoma royalty owners. Nonetheless, Sonya Smith, a royalty owner of EOG-owned wells in Oklahoma seeks to intervene in this suit; Roco seeks leave to amend in order to add Smith as a Plaintiff. Roco argues that intervention and amendment render moot any standing challenge.

In the alternative to its motion for partial judgment on the pleadings, EOG moves for severance of the Oklahoma claims in this case and transfer of those claims to the Western District of Oklahoma. EOG contends that severance and transfer is warranted in this case based

[3] Doc. 19 ¶ 7.

on a stipulation filed in a previously-dismissed putative class action filed by the same class counsel in the Western District of Oklahoma, as well as under 28 U.S.C. § 1404.

## II. Standing, Intervention, and Leave to Amend

As a general rule, the court first addresses a motion for leave to amend because if leave is granted, the motion for judgment on the pleadings is moot. Defendant's motion for judgment on the pleadings in this case challenges Plaintiff's standing to assert the Oklahoma claims alleged. In its response to the motion for judgment on the pleadings, Plaintiff disputes that it lacks standing, but admits that the alleged standing problem is cured by allowing Smith to intervene on behalf of the Oklahoma royalty owners. Defendant contends that the Court should first decide the motion for judgment on the pleadings, which would render moot the motion to intervene and therefore Plaintiff's motion to amend because no remaining Oklahoma claims would exist in which to intervene.

Plaintiff's standing is properly challenged by a Rule 12(b)(1) motion because a party's standing implicates subject matter jurisdiction.[4] The standing requirement for a named plaintiff is no different in the class action context.[5] Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[6] "Second, a party may go beyond allegations

---

[4] *Unicredit Bank AG v. Jue-Thompson*, No. 12-2468-EFM, 2013 WL 6185750, at *3 (D. Kan. Nov. 26, 2013) (citation omitted).

[5] *Lewis v. Casey*, 518 U.S. 343, 357 (1975).

[6] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (citations omitted).

contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[7] Defendant's motion is a facial attack on the jurisdictional allegations in the SAC. Therefore, in considering the motion, the Court accepts the allegations in the SAC as true.

To establish Article III standing, a plaintiff must show: (1) injury in fact, (2) causation, and (3) redressability.[8] "To demonstrate an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."[9] Furthermore, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."[10] Last, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[11] "[T]he injury must affect the plaintiff in a personal and individual way."[12]

Defendant argues that Roco lacks standing as to the Oklahoma claims because it is not a

---

[7]*Id*. at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[8]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

[9]*Id*. at 561.

[10]*Id.*

[11]*Id.*

[12]*Id.*

resident of Oklahoma, and therefore there is no alleged connection between Roco's injuries and EOG's alleged violation of Oklahoma law. Plaintiff argues that its injuries are the same as those of the Oklahoma royalty owners, which is sufficient to establish standing. Moreover, post-intervention and amendment, Plaintiff argues that Intervenor Smith is a resident of Oklahoma, whose injury arose from EOG's violation of Oklahoma law, and thus intervention would cure any alleged standing issue because a favorable decision under Oklahoma law would redress her injury.

Assuming without deciding that the "logically antecedent" exception does not apply under these circumstances and therefore the Court is required to consider Roco's standing before class certification,[13] the Court is compelled to find that Roco lacks standing to assert the Oklahoma claims in this action. Several courts, including other district courts in the Tenth Circuit, have determined that the plaintiffs in a putative class action "may only assert a state law claim if a named plaintiff resides in, does business in, or has some other connection to that

[13]The parties dispute whether this exception to the general rule of considering standing as a threshold issue applies here in the absence of Tenth Circuit authority. The Court notes that there is a split of authority as to when to apply the logical antecedent exception in the context of class actions where the named plaintiff's standing is in issue regardless of whether a class is certified. *Compare Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) (explaining that the exception only applies when the standing question would only exist if the class is certified, where class certification creates the jurisdictional issue); *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (finding exception does not apply outside of the context of global mass settlement); *Thomas v. Metropolitan Life Ins. Co.*, 540 F. Supp. 2d 1212, 1226–27 (W.D. Okla. 2008) (same), *aff'd*, 631 F.3d 1153 (10th Cir. 2011), *and Smith v. Pizza Hut, Inc.*, No. 09-1632-CMA, 2011 WL 2791331, R *9–10 (D. Colo. July 14, 2011) (explaining that the exception applies when the standing question would only exist if the class is certified, where class certification creates the jurisdictional issue), *with Payton v. Cnty. of Kane*, 308 F.3d 673, 679 (7th Cir. 2002) (interpreting precedent as requiring courts to consider class certification first); *Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856, at *2 (W.D. Wash. May 1, 2007) (deferring standing consideration until after class certification because plaintiff had been injured by the defendant and simply represented similar injuries under other state laws), *and Woodard v. Fidelity Nat'l Title Ins. Co.*, No. CIV 06-1170 RB/WDS, 2007 WL 5173415, at 3 (D.N.M. Dec. 4, 2007) (applying logical antecedent exception because standing question only exists due to the class action nature of the action).

state."[14] It is undisputed that Roco neither resides in, nor does business in, nor has any other connection to the state of Oklahoma. Nonetheless, the addition of Smith as a named plaintiff would clearly cure the standing issue because she is a resident of Oklahoma and a royalty owner of EOG-producing wells in Oklahoma. Defendant argues that intervention and amendment would not render moot its standing challenge because Smith lacks standing to represent the Kansas royalty owners in this matter. But Defendant cites no authority for the proposition that each representative Plaintiff must establish standing in a putative class action as to each and every claim asserted. Instead, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless *at least one* named plaintiff has suffered the injury that gives rise to that claim."[15] As long as at least one plaintiff has standing with respect to each claim alleged in the proposed Third Amended Complaint ("TAC"), it will satisfy the injury requirement of standing.

In class actions, where a named plaintiff's individual claims fail or become moot for a reason that does not affect the viability of the class claims, courts regularly allow or order plaintiff's counsel to substitute a new representative plaintiff.[16] The general rule is that if Plaintiffs are without standing, then amendment would not be allowed, as a plaintiff "may not

---

[14]*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987); *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014) (collecting cases); *Thomas*, 540 F. Supp. 2d at 1226–27; *Smith*, 2011 WL 2791331, at *9–10; *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009). *But see Beer v. XTO Energy, Inc.*, CIV-07-798-L, 2009 WL 764500 (W.D. Okla. Mar. 20, 2009) (finding standing in royalty dispute involving royalty owners in Kansas and Oklahoma despite the lack of a class representative from Kansas).

[15]*Griffin*, 823 F.2d at 1483 (emphasis added); *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994); *see also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 1098, 1107 (N.D. Cal. 2007); *Smith*, 2011 WL 2791331, at *9; *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004).

[16]*See Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8 (N.D. Cal. Mar. 5, 2013) (collecting cases).

create jurisdiction by amendment when none exists."[17] Where the only named plaintiff in a putative class action lacks standing from the outset of the case, and a class is yet to be certified, the proper course is dismissal.[18]

But the Court finds that dismissal would not be warranted in this case without leave to amend. Plaintiff does not seek to substitute an entirely new party in order to create jurisdiction where none previously existed. Unlike the cases that dismiss for lack of standing before class certification,[19] all parties agree that the named Plaintiff in this case has standing to assert the claims made under Kansas law with respect to the Kansas royalty owners. Taking the allegations in the SAC as true, Roco was injured by this Defendant in the same exact way the Oklahoma royalty owners are alleged to have been injured—by taking certain deductions before the gas products were in marketable condition, and by not obtaining the highest and best reasonable price for all the constituents of the gas stream. And there is a pending motion to intervene that cures the standing problem on the Oklahoma claims. Indeed, in *Thomas*, the primary case relied upon by EOG on the standing issue, the claims brought under state laws

---

[17]*Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D.D.C. 1999), *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001) (citations and quotation marks omitted); *see also Lierboe v. State Farm Mut. Auto. Ins.* Co., 350 F.3d 1018, 1023 (9th Cir. 2003) (holding lack of standing cannot be cured by amendment to substitute "another [class] representative"); *Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2009 WL 3809808, at *2 (N.D. Cal. Nov. 13. 2009) ("[W]here the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal.").

[18]*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) (before class certification "the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant"); *Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 344 (N.D. Okla. 2010) (citing *Lierboe*, 350 F.3d at 1022) ("[B]ecause this is not a mootness case in which substitution or intervention might have been possible, we remand this case to the district court with instructions to dismiss."); 1 *Herbert B. Newberg on Class Actions* § 2:7 (4th ed. 2002) ("If the plaintiff has no standing individually, then no case or controversy arises. . . .")).

[19]*See, e.g.*, *Hunnicutt v. Zeneca, Inc.*, No. 10-CV-708-TCK-TLW, 2012 WL 4321392, at *1, 5 (N.D. Okla. Sept. 19, 2012); *Smith*, 2011 WL 2791331, at *1.

other than each plaintiff's own state of residence were dismissed for lack of standing with leave to amend.[20] This Court has subject matter jurisdiction over this action under CAFA, as set forth by Defendant EOG in detail in its notice of removal, and Plaintiff's standing is unchallenged as to the Kansas claim in this case.[21] Because this Court does not lack jurisdiction at the outset of this action, it will consider the motion to intervene and motion for leave to amend before ruling on the motion for judgment on the pleadings.[22]

As described below, because the Court will allow Smith to intervene in this matter as a representative plaintiff, Defendant's motion for judgment on the pleadings is moot.

### A. Motion to Intervene

Smith moves to intervene in this matter in order to represent the interests of the Oklahoma subclass. Under Fed. R. Civ. P. 24(a)(2), on timely motion, the Court

> must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its

---

[20]*Thomas*, 540 F. Supp. 2d at 1226.

[21]Of course, if this Court dismissed the Oklahoma claims from this action, it would be compelled to review the remaining jurisdictional allegations in the notice of removal under 28 U.S.C. § 1447(c) to determine if the Court retains subject matter jurisdiction over the remaining Kansas claim.

[22]*See Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-42 (JG)(VVP), 2013 WL 6481195, at *8 & n.8 (E.D.N.Y. Sept. 20, 2013) (collecting cases where courts have allowed an additional representative plaintiff for state law claims after finding that an existing plaintiff alleged standing as to related claims). Defendant cites dicta from the *Smith* decision questioning the ability of the Court to adjudicate claims brought under the laws of several states in the event that the plaintiff in each case sought leave to amend to add a named representative from each state alleged in the complaint. *See Smith*, 2011 WL 2791331, at *9 n.13; *see also In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014) (quoting *Smith*, 2011 WL 2791331, at *9). The Court is not persuaded that this language counsels against amendment in this case. First, those courts did not have before them motions to add representative parties as this Court does. Second, each of those cases involved more than a dozen state law claims—here we are dealing with only two. And finally, this dicta comments on the adequacy of representation inquiry that does not arise until the Court determines whether the class should be certified under Rule 23.

interest, unless existing parties adequately represent that interest.[23]

The Court must allow intervention as a matter of right if (1) the application is timely, (2) the movant "claims an interest relating to the property or transaction that is the subject of the action,"[24] (3) the movant's interest "may as a practical matter" be "impair[ed] or impede[d],"[25] and (4) the movant's interest is not adequately represented by the existing parties.[26] Even if the Court determines that intervention as of right is not appropriate, the Court may permit anyone on timely motion to intervene under Rule 24(b)(1), who "(B) has a claim or defense that shares with the main action a common question of law or fact," and after considering whether the intervention "will unduly delay or prejudice the adjudication of the original parties' rights."

Defendant's sole argument opposing intervention is that denial would not prejudice Smith or the Oklahoma royalty owners because they are free to file Oklahoma class claims in the Western District of Oklahoma. Because there is no dispute that the motion is timely, that Smith claims an interest in property that is the subject of this action, and that Smith is not adequately represented by the existing Plaintiff, the Court need only consider whether Smith's interest would be impaired or impeded if intervention was denied.

In evaluating both Smith's interest and the impairment of that interest, the Court is mindful that Rule 24(a)(2) requires analysis of the specific circumstances of this case; it is not a

---

[23]Fed. R. Civ. P. 24(a)(2).

[24]*Id.*

[25]*Id.*

[26]*E.g.*, *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001).

mechanical rule.[27] "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."[28] The movant must show "only that impairment of its substantial legal interest is possible if intervention is denied. The burden is minimal."[29] While the Court discusses convenience and choice of law issues related to transfer in the next section of this opinion, it must consider here whether dismissal and refiling could *possibly* impair Smith's substantial legal interest in the allegedly unpaid royalty payments at issue in this matter. The parties seem to agree that the practical effect of denying intervention may be dismissal of the Oklahoma subclass claims, which would require a representative party for those claims to refile in an Oklahoma court. Moreover, given statute of limitations constraints and possible application of the first-to-file rule, these claims could possibly be subject to dismissal in Oklahoma.[30] The possibility of these outcomes is sufficient to show that Smith's substantial legal interests could be impaired. The Court finds that Smith has shown that she is entitled to intervene as of right.

Even if Smith was not entitled to intervene under Rule 24(a)(2), the Court would grant permissive intervention. The Kansas and Oklahoma royalty owners allege that the same conduct by Defendant caused their injuries under Kansas and Oklahoma law. Moreover, the Court does not find that allowing intervention would prejudice the interests of the original parties to this

---

[27]*San Juan Cnty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc).

[28]*Id.* at 1193; *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009).

[29]*WildEarth Guardians*, 573 F.3d at 995.

[30]*See Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 WL 2773311, at *6 (W.D. Okla. July 13, 2010) (finding mandatory intervention in dispute over gas royalties by royalty owners in Kansas; referencing case filed in the United States District Court for the District of Kansas against the same defendant that was filed first).

action. The Court is not persuaded that the delay in seeking intervention should weigh against Smith. The case was at a standstill in state court for much of its lifespan before removal, and EOG did not raise a standing argument when it opposed the initial motion for leave to amend in state court, so the court cannot find that Smith was on notice that her interests were at risk of impairment until that issue was raised after removal. Intervention would not unduly delay adjudication of this removal action, as the parties have not engaged in meaningful discovery since the time of removal; the deadline for discovery on class certification issues is August 7, 2015. Moreover, having to litigate against another party does not constitute prejudice.[31] The Court therefore grants Smith's Motion to Intervene as a representative plaintiff in this action.

**B. Motion for Leave to Amend**

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[32] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[33] The Court finds no undue delay, bad faith or dilatory motive in Plaintiff's motion for leave to amend. Given that the proposed TAC seeks to reflect the changes dictated by intervention, the Court finds that it should be granted. As already discussed, the Court finds no prejudice or bad faith in allowing intervention at this stage of the proceedings and further finds that the proposed intervenor has standing to assert the Oklahoma claims in this matter.

---

[31]*See, e.g.*, *Techcapital Corp. v. Amoco Corp.*, No. 99 CIV 5093(AGS), 2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001).

[32]Fed. R. Civ. P. 15(a)(2).

[33]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

Having determined that intervention and leave to amend should be granted, and that the representative plaintiffs have standing to assert both claims alleged in the proposed TAC, the Court turns to Defendant's motion to sever the Oklahoma claims and transfer them to the Western District of Oklahoma.

## III. Motion to Sever and Transfer

Having determined that Defendant's motion for judgment on the pleadings is moot, the Court turns to its alternative motion to sever and transfer the Oklahoma claims in this case. "Section 1404(a) only authorizes the transfer of an entire action, not individual claims," unless those claims are severed under Fed. R. Civ. P. 21.[34] Before the Court may consider Defendant's request for transfer of the Oklahoma claims, it must determine whether severance of those claims is appropriate.

### A. Severance

Fed. R. Civ. P. 21 gives "district courts discretion to sever any claim against a party and proceed with the claim or claims separately."[35] The Court can "sever unrelated claims and afford them separate treatment when to do so would be in the interest of some of the parties," would serve the interests of justice, and would further the prompt and efficient disposition of litigation.[36] The Court weighs the potential prejudice to the movant if severance is denied against the potential prejudice to the nonmovant if severance is granted.[37] "When determining

---

[34]*See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991) .

[35]*Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003).

[36]*Id.*

[37]*Id.* at 624.

whether severance is appropriate under Rule 21, the court considers the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic."[38] "A logical relationship exists if there is some nucleus of operative facts or law."[39] "Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum,"[40] but severance and transfer are only appropriate on rare occasions.[41]

The Court finds that the requisite factors do not weigh in favor of severance under Rule 21. The Oklahoma and Kansas claims are not unrelated. The proposed TAC alleges the same factual allegations that give rise to the Kansas and Oklahoma claims. Count 1 alleges the same breach of lease claim under both bodies of law, while Count II alleges an additional claim of breach of fiduciary duty under Oklahoma law. In essence, the proposed TAC complains of the methodology used by EOG to calculate gas royalties, a policy that was universally applied to royalty owners in Oklahoma and Kansas. The Court finds that the Kansas and Oklahoma claims share a common nucleus of operative facts and law.

The Court also finds that judicial economy and expedition weigh firmly against

---

[38]*Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996) (citing *Sutton Hill Assoc. v. Landes*, No. 87 Civ. 8452, 1988 WL 56710, at *2 (S.D.N.Y. May 25, 1988), *Spencer White & Prentis Inc. v. Pfizer Inc.*, 498 F.2d 358, 362 (2d Cir. 1974)). In *Old Colony*, the court denied severance because the issues were "inextricably intertwined with the remainder of the action." *Id.*

[39]*MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993)).

[40]*Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 624 (D. Kan. 2003) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure §1689 (3d ed. 2003) (citing *Fed. Deposit Ins. Corp. v. McGlamery*, 74 F.3d 218 (10th Cir. 1996))).

[41]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991) (citing 3A Moore's Federal Practice ¶ 21.05[2] at 43–44).

severance and transfer. There is no parallel action in Oklahoma with which the Oklahoma subclass would join if transferred. Instead, severance and transfer would create two parallel actions in Kansas and Oklahoma, doubling the litigation for Defendant and class counsel. This outcome stands in contrast to the outcome of a motion to sever and transfer in a case relied on by Defendant, *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,[42] a putative class action seeking to recover gas royalties under Kansas and Oklahoma law before Judge Marten. There, Judge Marten determined that severance and transfer were warranted on Plaintiff's motion because there was an existing action in the Eastern District of Oklahoma that encompassed the class claims as well as additional tort claims that would permit an award of punitive damages.[43] Regardless of whether the court severed and transferred, the *XTO Energy* defendant would be required to defend two separate lawsuits. Here, however, there is no existing Oklahoma case and severance would therefore create an additional case in a different venue with identical factual claims and several identical legal issues. The Court easily finds that severance is not in the interest of judicial economy under the circumstances of this case.

Finally, the Court does not find that this is the "rare occasion" where severance and transfer to the Western District of Oklahoma, located in Oklahoma City, is appropriate because it is more convenient for the parties. As discussed in detail in its § 1404 analysis, to the extent the Oklahoma City forum is more convenient for a few of the witnesses, this convenience is

---

[42]No. 08-1330-JTM, 2011 WL 2174946, at *4 (D. Kan. June 3, 2011).

[43]*Id.* Defendant argues that the Court should consider that class counsel in the *XTO Energy* case is the same as class counsel here, implying that counsel should somehow be barred from taking opposing positions in the two motions. The Court considers the motion before it without regard for the case-specific considerations before Judge Marten in that case. The cases involved different parties and, as discussed, there is no pending parallel Oklahoma action in this case as there was in the *XTO Energy* case.

rendered moot by the fact that the majority of witnesses will be required to travel to Kansas anyway to testify about the common factual and legal issues shared by the claims. Any slight convenience to the Oklahoma witnesses does not outweigh this Court's strong interest in promoting judicial economy and promoting consistent treatment of identical claims of injury.

### B. Transfer Based on the *Murrah* Stipulation

Defendant first seeks transfer based on a stipulation of dismissal filed on June 4, 2012, in *Murrah v. EOG Resources Inc.*, in the Western District of Oklahoma, assigned to United States District Judge Vicki Miles-LaGrange.[44] The *Murrah* Complaint, filed in 2010, alleged breach of lease, unjust enrichment, accounting, fraud, deceit, constructive fraud, breach of fiduciary duty, and tortious breach of lease, seeking unpaid royalties for a putative class of Oklahoma royalty owners dating back to 1987.[45] Plaintiff moved for voluntary dismissal one day before the motion for class certification was due, subsequent to decisions by Judge Miles-LaGrange in two other cases denying class certification of Oklahoma royalty owners of BP- and Anadarko-producing wells.[46] Judge Miles-LaGrange granted the named plaintiffs' motion for voluntary dismissal and ordered the case dismissed without prejudice subject to the following terms urged by Defendant: "In the event this suit or any suit seeking substantially the same class against EOG *is re-filed by either Plaintiff*, it shall be filed in the federal court for the Western District of Oklahoma and assigned to the Honorable Vicki Miles-LaGrange."[47] Defendant argues here that this stipulation

---

[44]Case No. CIV-10-994 (W.D. Okla.).

[45]*Id.*, Doc. 1.

[46]*Tucker v. BP Am. Prod. Co.*, 278 F.R.D. 646 (W.D. Okla. 2011); *Morrison v. Anadarko Petroleum Corp.*, 280 F.R.D. 621 (W.D. Okla. 2012).

[47]Doc. 10 at 197.

governs the Oklahoma claims in this matter and dictates that they be transferred to the Western District of Oklahoma.

The Court agrees with Plaintiff that the *Murrah* stipulation does not dictate transfer here. By its plain terms, the *Murrah* stipulation only applies to a suit filed by "either Plaintiff" in the *Murrah* case. Neither *Murrah* plaintiff is a named party in this action. Moreover, the Court agrees that the plaintiffs in *Murrah* could not bind the members of the proposed class in this case, and therefore, the stipulation is not binding on Smith or any other putative classmember in this matter that was not a named plaintiff in the *Murrah* action.[48] The Court is not bound by the stipulation to transfer the Oklahoma claims in this case to Oklahoma.

**C. Transfer under 28 U.S.C. § 1404**

Defendant also seeks transfer under 28 U.S.C. § 1404(a), which provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness.[49] As Defendant concedes, the party proposing a particular forum has the burden of proving that plaintiff's chosen forum is inconvenient.[50] Unless the evidence is strongly in favor of the movant, plaintiff's choice of forum should rarely be disturbed.[51] In other words, a court should deny a request for transfer if

---

[48]*See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1348–49 (2013).

[49]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

[50]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

[51]*Id.*

the result is that the burden of an inconvenient venue would merely shift from one party to another.[52]

In determining whether transfer is appropriate under Section 1404(a), the Court should consider the plaintiff's choice of forum, the accessibility of witnesses and other sources of proof, the cost of making the necessary proof, questions as to the enforceability of a judgment if one is obtained and relative advantages and obstacles to a fair trial, difficulties that may arise from congested dockets, the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law, and "all other considerations of a practical nature that make a trial easy, expeditious and economical."[53] The Court examines each in turn, in considering whether this case should be transferred from its current trial location of Wichita, Kansas.[54]

**1. Plaintiff's Choice of Forum**

Courts generally hold that the plaintiff's choice of forum weighs against transfer.[55] "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed."[56] Courts give less deference to the plaintiff's choice, however, if plaintiff

---

[52]*KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998).

[53]*Chrysler Credit Corp.*, 928 F.2d at 1515–16 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1957)).

[54]The relevant inquiry does not involve an analysis of the Topeka, Kansas divisional office. This case was filed in Wichita, Kansas. Defendant designated Wichita, Kansas as the place for trial under D. Kan. Rule 40.2 (Doc. 1). The case will be set for trial therefore in the Wichita, Kansas division.

[55]*Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000).

[56]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

does not reside in the district.[57] Here, Plaintiff Roco is a Kansas corporation but Smith is an Oklahoma citizen. Since the motion to transfer involves only the Oklahoma claims, the Court relegates its analysis to Intervenor Smith. Thus, although the Court must give deference to Smith's forum choice, the weight of such choice is diminished because she does not reside in Kansas.

Moreover, "[c]ourts also accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'"[58] As discussed throughout this opinion, the injury to the Oklahoma royalty owners took place exclusively in Oklahoma, despite the fact that it is the same type of injury felt by the Kansas royalty owners—based on the method of calculating royalties by EOG. In sum, the Court finds that this factor weighs only slightly against transfer, acknowledging that the weight of this factor is diminished by Smith's lack of Kansas residency and the fact that the Oklahoma subclass's injury, while of the same type as the Kansas subclass's injury, is not significantly connected to the state of Kansas.

**2. Accessibility of Witnesses and Other Sources of Proof**

The accessibility of witnesses, both party and non-party, is an important factor in a Section 1404(a) analysis. In this circuit, the convenience of witnesses is the single most important factor in deciding a motion to transfer.[59] The movant has the burden to demonstrate

---

[57] *Amwest Sur. Ins. Co. v. Guarantee Elec. Constr. Co.*, No. 00-2196, 2000 WL 1310512, at *4 (D. Kan. Aug. 21, 2000).

[58] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

[59] *Id.*

inconvenience by: (1) identifying witnesses and their locations; (2) indicating the materiality of their testimony; and (3) showing that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.[60]

The parties have submitted affidavits concerning the location of witnesses and other sources of proof material to the claims alleged in this case. EOG identifies eight witnesses who will testify in this case, who work in either Oklahoma City or Houston. Plaintiff argues that the EOG witnesses most likely to testify in this matter are located in Houston, not Oklahoma City, and would be required to testify twice if the case was severed.

EOG submitted affidavits from Bryan Hennigan,[61] a Division Land Manger based in Oklahoma City, and Jeff Harmon,[62] who is Manager of Revenue Accounting based in Houston. Hennigan attests that he has knowledge of the facts giving rise to the claims alleged in this matter because the Oklahoma oil and gas lease agreements were negotiated and executed primarily through brokers under the direction of the EOG landman working in EOG's Oklahoma City office. He claims that in addition to himself, two other EOG employees would testify about the details and mechanics of separation, compression, dehydration, gathering, and processing operations concerning EOG's natural gas production in Oklahoma. Harmon attests that he and the other Houston-based witnesses would testify about strategic decision making and policy formulation with regard to calculation and payment of royalties, as well as marketing decisions and contracts for Oklahoma natural gas production. Harmon attests that there are no EOG

[60]*Id.*

[61]Doc. 25-1, Ex. C.

[62]Doc. 25-1, Ex. A.

employees residing or working in Kansas and there is no documentary evidence material to trial located in Kansas. There is no evidence that any of the Oklahoma or Texas witnesses are unwilling to travel to Kansas for trial.

The Court finds that the convenience of the five Houston-based witnesses is at best neutral in the transfer analysis, and at worst counsels against transfer. Oklahoma City is 150 miles away from Wichita and there are nonstop flights available between Houston and Wichita. Even if Oklahoma City is slightly more convenient for the Houston witnesses, this issue is a moot point in light of the fact that these witnesses surely must travel to Wichita anyway in the event of trial on the remaining Kansas claim. Assuming without deciding that the Oklahoma witnesses have material information to the claims asserted here, the minimal inconvenience to the three Oklahoma witnesses driving 150 miles is neutral in the transfer analysis when compared to the Houston witnesses being required to travel to two venues.

Likewise, the location of other sources of proof does not dictate transfer. Plaintiff argues that there would be no need for evidence about the day-to-day operations of the wells in Oklahoma and therefore the Oklahoma-based witnesses and evidence would not be necessary in this case. It appears to the Court from the allegations in the proposed TAC that the gas measurement and accounting for Oklahoma's natural gas production may be in issue, however Defendant fails to explain how the location of these documents in Oklahoma affects the convenience analysis. Plaintiff's counsel has submitted an affidavit stating that EOG has already produced two CDs of electronic documents regarding the Oklahoma wells in this case, which were hand delivered to class counsel in Houston. The Court agrees that much of this evidence will take the form of business records that are located in Houston, and are likely in electronic

form. EOG must produce much of this evidence with respect to the Kansas claims anyway and producing some additional information, particularly documents likely to be in electronic form, will not result in a material inconvenience to Defendant.

**3. Cost of Making the Necessary Proof**

Defendant argues that because the majority of proof, including witnesses, is in Oklahoma City and Houston, traveling a shorter distance for depositions and trial would lessen delay and inconvenience, as well as expense. As already stated, most of the proof on the methods of calculation for the gas royalty payments is located in Houston and will be required whether or not the Court transfers this action. The Court does not find that 150 miles for three witnesses is a significant expense and Defendant does not explain how any other form of proof would incur additional expenses on Defendant's part. The Court finds that splitting this case into two venues would in fact increase the cost of proof with regard to the evidence that will be relevant to both the Kansas and Oklahoma actions because Defendant would be required to produce it twice. This factor weighs against transfer.

**4. Enforceability of a Judgment and Relative Advantages and Obstacles to a Fair Trial**

The parties agree that these two factors are neutral and do not factor into the transfer analysis.

**5. Docket Congestion**

In considering this factor, "the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted

filings per judge."[63] As of June 2014, the average time from filing to disposition in Kansas was 9 months; in the Western District of Oklahoma it was 8.4 months.[64] The average time from filing to trial in Kansas was 26.6 months; in the Western District of Oklahoma it was 20.9 months.[65] Average weighted filings per judgeship in Kansas was 361, compared to 305 in the Western District of Oklahoma.[66] These comparable statistics do not weigh in favor of transfer. To the extent the six month difference in average time from filing to trial favors transfer, the Court is persuaded by Plaintiff's argument that any minimal advantage to the Oklahoma claims being transferred to a court with a slightly quicker trial docket would be diminished by the fact that the Kansas claims remain in this case, and that Defendant will essentially be starting over from scratch in the Oklahoma court, rather than joining a lawsuit that is already established. There is already a Scheduling Order in place in this case that has governed the removed Kansas and Oklahoma claims; intervention and amendment should not alter the course of discovery or motions for class certification. This factor is neutral.

**6. Conflict of Law and Local Determination of Questions of Local Law**

Defendant urges that this factor strongly weighs in favor of transfer because the Oklahoma courts are better suited to adjudicate the Oklahoma claims. While Defendant is correct that in diversity cases, "courts prefer the action to be adjudicated by a court sitting in the

---

[63] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (citations omitted).

[64] *See* Adminstrative Office of the United States Courts, Federal Court Management Statistics, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx (last updated June 2014).

[65] *Id.*

[66] *Id.*

state that provides the governing substantive law,"[67] this factor carries less weight because "federal judges are qualified to apply state law."[68] Defendant discusses at length what it views as significant differences in the Kansas and Oklahoma marketable condition rule. But the Court is persuaded by Judge Marten's analysis in *XTO Energy, Inc.*, denying a motion to dismiss based on the claimed differences in the marketable condition rule as between Colorado, Kansas, and Oklahoma.[69] While acknowledging "nontrivial differences" between the three states' laws, Judge Marten found no problem with the plaintiffs alleging the violation of an implied covenant to market under Oklahoma and Kansas law because both states have recognized claims based on the implied covenant of marketability.[70] While this is a diversity action where Oklahoma provides the governing law for at least one claim, the Court does not find this fact weighs in favor of transfer to Oklahoma because the differences in laws between the two states are not so significant as to render the undersigned unqualified to decide issues under each body of law.

Moreover, the factor that favors a local court determining issues of local law applies "[w]hen the merits of an action are unique to the particular locale."[71] As discussed, at best this factor tips slightly in favor of transfer with respect to the Oklahoma claims. But the Court again

---

[67]*Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (citations omitted).

[68]*Id.* (citation omitted).

[69]*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1291 (D. Kan. 2010) ("A careful review of decisions from the three states establishes that, for gas leases which require that royalty interests are determined by the marketability of the gas 'at the well,' all three states impose a general obligation on the part of the lessee to render the gas marketable, and hold that such expenses may not be charged to lessors. However, the states disagree on whether the lessors may be charged for transportation expenses, and whether the issue is a question of law or fact.").

[70]*Id.* at 1294–95.

[71]*Id.*

finds that the merits of this action concerning the Kansas and Oklahoma claims are not so different as to favor an Oklahoma court determining the Oklahoma claims. This factor only slightly favors transfer.

**7. Judicial Economy**

At bottom, the practical effect of Defendant's request is to create an additional case based on the same factual issues lodged against the same Defendant in two different venues. It is axiomatic that "[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues 'leads to the wastefulness of time, energy and money.'"[72] While the Court is cognizant that Defendant's proposed transfer involves only the putative class of Oklahoma royalty owners, the representative plaintiffs in Kansas and Oklahoma challenge the same practices by EOG and assert the same claim in Count I. There is no related case in the Western District of Oklahoma as there was in the *XTO Energy* case, where Judge Marten observed that the potential recovery to the Oklahoma royalty owners was much broader if he allowed transfer because the Oklahoma case asserted tort claims for which an award of punitive damages was available under Kansas law. Such potential for different claims or broader relief is not present in this case, which only asserts two claims and includes a prayer for punitive damages. The Court's interest in the efficient administration of justice, and in avoiding duplicative and piecemeal litigation, strongly weighs against transfer of this matter to Oklahoma.

In sum, the few factors that marginally weigh in favor of transfer under the Court's

---

[72] *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

analysis are outweighed by the interests that weigh against transfer: the plaintiff's choice of forum, the convenience of the witnesses, the cost of making the necessary proof, and the Court's strong interest in judicial economy. As such, even if the Court were inclined to sever the Oklahoma claims in this matter, it would not transfer them to the Western District of Oklahoma.

**IT IS THEREFORE ORDERED BY THE COURT** that Sonya Smith's Motion to Intervene as Named Plaintiff (Doc. 32), and Plaintiff Roco Inc.'s Motion to Amend Complaint (Doc. 34) are **granted**. **Plaintiffs shall file the Third Amended Complaint by October 29, 2014.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Judgment on the Pleadings (Doc. 22) is **moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Sever and Transfer Oklahoma Claims to the Western District of Oklahoma (Doc. 24) is **denied**.

**IT IS SO ORDERED**.

Dated: October 24, 2014

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE